UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JENNIFER MORRISON, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-141-P-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that she is disabled by depressive disorder and anxiety disorder, could return to past relevant work. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of a depressive disorder and an anxiety disorder, Finding 3, Record at 9; that she did not have an impairment or combination of impairments that met or medically equaled the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id.* at 10; that she retained the residual functional capacity

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 17, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

("RFC") to perform light work, except that she could not climb ladders, ropes, or scaffolds, could only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, and was limited to simple, routine tasks not performed in a fast-paced production environment, few changes in the work setting, and work involving no more than occasional interaction with supervisors, co-workers, and the general public, Finding 5, *id*. at 11; that she was capable of performing past relevant work as a merchant patroller (security guard), which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 14; and that she, therefore, had not been under a disability from September 30, 2005 (her alleged date of onset of disability), through the date of the decision (November 25, 2008), Finding 7, *id*. at 15.[2] The Decision Review Board declined to disturb the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would

---

[2] The plaintiff was insured for purposes of SSD benefits through June 30, 2008. *See* Finding 1, Record at 9.

permit performance of that work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.1520(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

In addition, the plaintiff's statement of errors implicates Step 3 in the sequential process.  At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(e), 416.920(e)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings.  20 C.F.R. § 405.101 (incorporating C.F.R. §§ 404.1525(c)(3), 416.925(c)(3)).  To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1526(a), 416.926(a)).

## I.  Discussion

The plaintiff complains that the administrative law judge erred in (i) rejecting the testimony of James M. Claiborn, Ph.D., an impartial medical expert present at her hearing, that her condition equaled Listing 12.06, (ii) concluding that she could return to past relevant work as a merchant patroller/security guard although such work was precluded by a limitation to simple work, (iii) failing to account in his RFC determination for the moderate difficulties that he found in social functioning and concentration, persistence, or pace, (iv) omitting to ensure, as required by Social Security Ruling 00-4p ("SSR 00-4p"), that the testimony of the vocational expert did not conflict with the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"), and (v) failing to ascertain the mental demands of the plaintiff's past work as a

merchant patroller/security guard, as required by SSR 82-62. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 12) at 2-13.[3] I find no reversible error.

### A. Step 3 (Listings) Determination

At the plaintiff's hearing, Dr. Claiborn testified that her condition equaled Listing 12.06, *see* Record at 52, which covers anxiety-related disorders and is met if, *inter alia*, the condition is assessed under paragraph B of that listing as resulting in at least two of the following: (i) marked restriction of activities of daily living, (ii) marked difficulties in maintaining social function, (iii) marked difficulties in maintaining concentration, persistence, or pace, or (iv) repeated episodes of decompensation, each of extended duration, *see* Listing 12.06.

Dr. Claiborn testified:

> What the claimant has is a combination of psychiatric disorders. She has [a Listing] 12.04 affective disorder. It's described variously as major depression or dysthymic disorder in Dr. Lu[o]ngo's most recent report, depression NOS [not otherwise specified], and some of the Ingraham notes. She's also got an anxiety disorder which is [Listing] 12.06. Probably best described as posttraumatic stress disorder, although what anxiety disorder this is it's a little fuzzy here. Potentially it's panic disorder, posttraumatic stress disorder. Kind of hard to sort that out, and during episodes clearly where it's untreated the combination of problems arises to the B criteria [of Listing 12.06] of causing marked interference with activities of daily living if claimant is barely able to get out of bed. It's causing at least moderate impairment of social functioning and causing marked impairment of concentration, persistence, and pace.

Record at 50-51. Dr. Claiborn testified that, even with treatment, the plaintiff would continue to have marked difficulties with concentration, persistence, or pace. *See id*. at 51-52. The administrative law judge queried whether, with treatment, the plaintiff's condition would

---

[3] The plaintiff also argues, in connection with her first point of error, that the administrative law judge erred in rejecting the opinions of consulting psychologist Frank Luongo, Ph.D., and treating social worker Heather Small, M.S.W., and in ignoring the opinion of consulting psychologist Barbara J. McKim, Ph.D. *See* Statement of Errors at 4-7.

continue to equal Listing 12.06. *See id.* at 52-53. Dr. Claiborn did not directly answer the question; however, he seemed to suggest that the condition could be controlled with treatment, responding:

> Well, depression tends to be an episodic disorder and even though untreated there's apparently a period where she was functioning better. Unfortunately what happens or what's likely to happen is the depression episode will reoccur if, and that can be avoided if treatment is continued during episodes or between episodes but, you know, so it's reasonable to believe that there was a period of relative remission and better functioning even though she wasn't at that time in treatment and then it relapsed.

*Id.* at 53. In response to additional questions from the administrative law judge, Dr. Claiborn testified that, with treatment, the plaintiff would be able to understand and carry out simple instructions and deal with routine changes in the workplace, although she would continue to have difficulty responding to supervision and working with co-workers. *See id.* at 53-54. He testified that he thought that she could handle her former job as a security guard. *See id.* at 54.

The administrative law judge rejected Dr. Claiborn's opinion that the plaintiff's condition equaled Listing 12.06 on grounds that it was inconsistent not only with "substantial medical evidence" but also with Dr. Claiborn's own testimony that the plaintiff probably could perform the duties of a security guard as she had performed it, provided that she was compliant with prescribed treatment. *See id.* at 11.

The plaintiff argues that the administrative law judge improperly discredited Dr. Claiborn's testimony regarding Listing 12.06 on the basis of the seeming contradiction with his testimony regarding her capability to perform past relevant work, citing *Nieves v. Secretary of Health & Human Servs.*, 775 F.2d 12 (1st Cir. 1985), for the proposition that once the evidence establishes that a listing has been met, analysis ends, and the agency cannot discredit the Step 3 finding on the basis of Step 4 considerations of ability to perform past work. *See* Statement of

Errors at 3. *Nieves* is distinguishable. In that case, the First Circuit found that the Appeals Council had improperly reversed an administrative law judge's finding that a claimant met Listing 12.05(C), pertaining to mental retardation, on the basis that the claimant had been able to perform work as a seamstress. *See Nieves*, 775 F.2d at 14. The First Circuit noted that the evidence had been uncontroverted that the claimant's IQ scores were sufficiently low to meet the listing. *See id*. In addition, the claimant alleged that she had been unable to work only after developing severe chronic myositis. *See id*.

The instant case does not involve a black-and-white testing score but rather a judgment call about the degree of restriction imposed by the plaintiff's impairments. The administrative law judge permissibly considered whether Dr. Claiborn's testimony, on the whole, unequivocally indicated that the plaintiff's condition equaled Listing 12.06 when she was compliant with prescribed treatment. He supportably found that it did not.

The plaintiff further asserts that the administrative law judge erroneously deemed Dr. Claiborn's testimony as to Listing 12.06 inconsistent with substantial medical evidence of record. *See* Statement of Errors at 3-7. She posits that (i) Dr. Claiborn's testimony was in fact consistent with the weight of expert opinion, including the opinions of Dr. McKim, Dr. Luongo, and social worker Small, (ii) the sole opinion of record of a nonexamining Disability Determination Services ("DDS") consultant, David R. Houston, Ph.D., does not undercut Dr. Claiborn's testimony because Dr. Houston merely stated that he had insufficient evidence to assess the plaintiff's condition, and (iii) the administrative law judge gave undue weight to the opinion of Dr. Robin Noble, a treating obstetrician/gynecologist who had not seen the plaintiff since April 2006, and cherry-picked from the notes of primary care physician Tevis H. Gearan, M.D., who was not herself treating the plaintiff's depression. *See id*. at 3-4, 6-7.

After reviewing the voluminous evidence of record, the administrative law judge concluded that (i) the evidence indicated that the plaintiff's symptoms improved with treatment but that she had not adhered to prescribed therapeutic regimens, and (ii) the record also strongly suggested that her anxiety and depression were, in part, understandable reactions to situational stressors and that non-medical factors, such as pregnancy and problems with child care and transportation, had been obstacles to obtaining and maintaining employment. *See* Record at 12. These conclusions are supported by substantial evidence, including:

1. The plaintiff's own testimony at hearing that she had left jobs because she lacked transportation or because of conflicts with her children's schedules, *see id*. at 30, 32-33, and that compliance with medication, particularly a Cymbalta prescription, had been beneficial in controlling her symptoms, *see id*. at 38, 40-41.

2. Indications in Ingraham and other progress notes that treatment, particularly with Cymbalta, had beneficial effects but that the plaintiff routinely missed appointments or arrived quite late for them, interfering with treatment by causing her to run out of prescribed medication and/or lose counseling time. *See id*. at 395-96, 410-11, 509, 670. The plaintiff's difficulties keeping appointments, in turn, were ascribed primarily to transportation problems. *See, e.g., id*. at 397, 410, 615, 724.[4]

3. Indications in Ingraham and other progress notes that the plaintiff's memory and concentration were within normal limits or only slightly impaired and her affect generally was appropriate or congruent, but that she was overwhelmed with situational stressors, including the

---

[4] The plaintiff's primary care doctor, Dr. Gearan, filled out a mental RFC form indicating that the plaintiff's symptoms markedly limited her in, or effectively precluded her from, maintaining regular attendance. *See* Record at 723. However, when asked to explain that finding, Dr. Gearan ascribed the plaintiff's difficulties to transportation problems rather than symptoms of mental impairment, stating: "She often misses her appointments at our office due to transportation issues." *Id*. at 724. Dr. Gearan did not indicate that the plaintiff had any other marked limitations. *See id*. at 723-24. She stated: "[The plaintiff] has been treated for depression in the past but has been doing well without medications for at least 6 months." *Id*. at 724.

7

demands of raising two small children as a single mother with limited financial and social support. *See, e.g., id*. at 395-96, 403, 408, 422, 493, 666.

In addition, as the administrative law judge pointed out, *see id*. at 14, in a letter dated November 28, 2007, Dr. Noble, who had managed the plaintiff's care during pregnancies, stated unequivocally that although she had a history of depression, migraines, and asthma, "she was never disabled from these disorders." *Id*. at 664. Although Dr. Noble had not seen the plaintiff since April 2006, *see id*., the administrative law judge also correctly noted that the plaintiff's treating physician, Dr. Gearan, indicated in an August 22, 2008, mental RFC form that the plaintiff had been doing well without medications for at least six months, *see id*. at 14, 724. While Dr. Gearan was not the plaintiff's primary treating provider for mental health issues, the record indicates that she did participate in her mental health care. *See, e.g., id*. at 703-07.[5]

For the foregoing reasons, I discern no error in the administrative law judge's declination to find at Step 3 that the plaintiff's condition met or equaled Listing 12.06.

---

[5] Dr. McKim evaluated the plaintiff on September 1, 2003, two years prior to her alleged onset date of disability, on referral from a counselor at Southern Maine Community College, where the plaintiff then was taking classes. *See* Record at 729-35. Based on a clinical interview, review of records, and administration of several tests, Dr. McKim found that the plaintiff "likely struggles with a broad range of difficulties that range from those specific to academic functioning, learning disabilities, to attentional problems, to ongoing struggles with anxiety and in the interpersonal arena." *Id*. at 733-34. Dr. McKim recommended strategies to optimize the plaintiff's academic functioning in view of her difficulties, including her "documented difficulties with attention and focus[.]" *Id*. at 734. While the plaintiff complains that the administrative law judge ignored Dr. McKim's opinion, she cites no authority for the proposition that it is reversible error to ignore the opinion of a consultant, *versus* a treating source. *See* Statement of Errors at 5, 7. In a function report dated May 4, 2007, social worker Small indicated, *inter alia*, that the plaintiff's impairments prevented her from working full-time, engaging socially in the community, and engaging fully with her children. *See id*. at 188. The administrative law judge supportably afforded Small's assessment little weight on the bases, *inter alia*, of its inconsistency with the overall evidence. *See id*. at 14. In an October 2008 report, Dr. Luongo stated that "the multiple psychological conditions with which this young woman struggles, particularly in the context of her current complex world as an expectant mother with two children[,] make her so vulnerable to disruptive psychological symptoms that she is incapable of gainful employment and can be expected to remain so for at least a year, and probably much longer." *Id*. at 742. The administrative law judge supportably rejected this opinion on the bases of its inconsistency with the record as a whole, including Dr. Luongo's own observations of the plaintiff during their brief association. *See id*. at 14. As the administrative law judge observed, *see id*., Dr. Luongo indicated that the plaintiff's mental status and behavior were within normal limits, and while he relayed her report of concentration difficulties, he did not note that he observed any, *see id*. at 741.

### B. Step 4: Past Relevant Work Precluded by Limitation to Simple Tasks

The plaintiff next faults the administrative law judge for finding that she could return to her past relevant work as a merchant patroller/security guard despite the fact that a person limited to the performance of simple work could not perform that job as it is described in the DOT. *See* Statement of Errors at 7-9.

This argument misses the mark. To be deemed capable of returning to past relevant work, a claimant must retain the RFC to perform either "the actual functional demands and job duties of a particular past relevant job" or, "when the demands of the particular job which claimant performed in the past cannot be met, . . . the functional demands of that occupation as customarily required in the national economy[.]" *Santiago v. Secretary of Health & Human Servs.*, 944 F.2d 1, 5 & n.1 (1st Cir. 1991) (citations and internal quotation marks omitted); *see also, e.g.*, SSR 82-62, at 811.

The administrative law judge found the plaintiff capable of returning to the merchant patroller/security guard job as she actually performed it. *See* Record at 14-15. Therefore, any error in failing to account for a discrepancy between the restriction to simple work and the functional demands of the job as described in the DOT (*i.e.*, as it is customarily performed in the national economy) is harmless.

### C. Failure To Account for Moderate Mental Health Restrictions

The plaintiff next asserts that, although the administrative law judge concluded that she had moderate difficulties in both social functioning and concentration, persistence, or pace, he failed to reflect those difficulties in his mental RFC finding. *See* Statement of Errors at 9-12. I am unpersuaded.

9

With respect to social functioning, the administrative law judge found the plaintiff restricted to no more than occasional interaction with supervisors, co-workers, and the general public.  *See* Finding 5, Record at 11.  The plaintiff cites no authority for the proposition that such a mental RFC finding *per se* fails to reflect moderate difficulties in social functioning.  Instead, she argues that the DOT indicates that a security guard potentially must respond to alarms and disturbances, apprehend unauthorized persons, contact headquarters, or even be involved in high-risk encounters with members of the public.  *See* Statement of Errors at 11.  Yet, the fact that security guards may have some level of contact with others begs the question of whether the mental RFC found by the administrative law judge reflects moderate difficulties in social functioning.  The plaintiff offers no reason to believe that it does not.

With respect to concentration, persistence, or pace, the administrative law judge found the plaintiff restricted to simple, routine tasks not performed in a fast-paced production environment.  *See* Finding 5, Record at 11.  The plaintiff points out that in *Arsenault v. Astrue*, Civil No. 08-269-P-H, 2009 WL 1609033 (D. Me. June 8, 2009) (rec. dec., *aff'd* July 28, 2009), this court approved language in *Edwards v. Barnhart*, 383 F. Supp.2d 920 (E.D. Mich. 2005), indicating that a restriction to simple, routine jobs does not reflect a moderate restriction in concentration, persistence, or pace.  *See* Statement of Errors at 11-12; *see also Arsenault*, 2009 WL 1609033, at *2; *Edwards*, 383 F. Supp.2d at 930.  Nonetheless, in this case, the administrative law judge added a further restriction, seemingly reflective of difficulties in concentration, persistence, or pace: a restriction to simple, routine jobs *not performed in a fast-paced production environment*.  *See* Finding 5, Record at 11.  The plaintiff cites no authority for the proposition that this specific type of restriction does not reflect moderate difficulties in concentration, persistence, or pace.

### D. Failure To Comply With SSR 00-4p

The plaintiff next asserts that the administrative law judge erred in failing to inquire, pursuant to SSR 00-4p, about any possible conflict between the vocational expert's testimony regarding the job of security guard and the description provided in the DOT. *See* Statement of Errors at 12. She posits that this error, in turn, led to the critical error of adopting vocational testimony at odds with the job description in the DOT. *See id.* As noted above, the administrative law judge relied on the plaintiff's ability to perform the job as she actually had performed it, not as it is generally performed in the national economy. *See* Record at 14-15. Thus, any error in failing to inquire into possible conflicts between the vocational expert's testimony and the DOT is harmless.

### E. Failure To Determine Mental Demands of Past Relevant Work

The plaintiff finally contends that the administrative law judge erred in failing to develop the record as to the mental demands of the plaintiff's merchant patroller/security guard as she actually performed it, undermining his conclusion that she retained the capability to return to that job. *See* Statement of Errors at 12-13.

Per SSR 82-62, a Step 4 determination must contain specific findings of fact regarding (i) the claimant's RFC, (ii) the physical and mental demands of the past job/occupation, and (iii) the fit between RFC and the demands of the past relevant work. *See, e.g.*, SSR 82-62, at 813.

The plaintiff is correct that the administrative law judge failed to set forth the mental demands of the merchant patroller/security guard as she actually performed it. *See* Record at 14-15. Nonetheless, I conclude that the error is harmless. The administrative law judge relied on testimony of the vocational expert present at hearing that a person with the posited RFC could

perform that job as the plaintiff actually performed it. *See id.* at 14-15, 56-57. The vocational expert, in turn, had the benefit of the plaintiff's testimony at hearing. The plaintiff described the job as one in which she was a "per diem worker" sent to miscellaneous job sites, with a final assignment at a secure condominium entailing sitting in the hallway and making sure no one attempted to break in. *See id.* at 31-32. She testified that she left the job after approximately two years because she was about to give birth to her second child and "needed mother's hours and it wasn't working[,]" *id.* at 33, and that she loved the job and felt she "was doing it all right[,]" *id.* at 35. The plaintiff denied that she was fairly often in contact with people in the course of her work, stating that she worked overnights and "just pretty much watched empty buildings." *Id.* at 49.

This testimony comprised a sufficient description of the mental demands of the job to permit the vocational expert and, in turn, the administrative law judge to conclude that a person restricted to simple, routine tasks not performed in a fast-paced production environment, few changes in a work setting, and no more than occasional interaction with supervisors, co-workers, and the general public could meet the demands of the job as actually performed.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be ***AFFIRMED***.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of December, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge